Matthew D. Pearson (SBN 294302)
mpearson@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650

Attorneys for Defendant
MIDI HEALTH, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN BAKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIDI HEALTH, INC.,<br><br>Defendant. | Case No. 5:25-cv-10414-EJD<br><br>**NOTICE OF MOTION AND MOTION OF MIDI HEALTH, INC. TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently with Declaration of Jaikumar Ramanathan, Declaration of Matthew D. Pearson, and [Proposed] Order<br><br>DATE: April 30, 2026<br>TIME: 9:00 a.m.<br>DEPT: 4<br><br>The Hon. Edward J. Davila |

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

**TO KRISTIN BAKER AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 30, 2026, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward J. Davila, located in the United States Courthouse, 280 South 1st Street, 5th Floor, Courtroom 4, San Jose, CA, 95113, MIDI HEALTH, INC. ("Midi" or "Defendant") will and hereby does move this Court to COMPEL ARBITRATION AND STAY THE PROCEEDINGS.

This Motion is made upon the grounds that Plaintiff Kristin Baker's ("Plaintiff) claims are subject to a valid and enforceable agreement that requires the parties to individually arbitrate any and all claims arising under the Plaintiff's use of Midi's website and services. Plaintiff agreed to arbitrate these claims when she created her account on Midi's website. That process asked Plaintiff to check a separate box affirming that she had read and agreed to Midi's Terms and Conditions (the "Terms"), which she did. By checking that box and successfully creating her account, she agreed to be bound by the Terms, which included a comprehensive arbitration agreement (the "Arbitration Agreement").

The Arbitration Agreement covered all legal claims, disputes, or other controversies arising out of or relating to the Midi website and Midi's services. Plaintiff's claims are related to her use of Midi's website; she alleges that Midi enabled third parties to intercept and collect her communications with the website, unbeknownst to her and without her consent. These allegations fall squarely within the Arbitration Agreement's scope. This Court should compel arbitration of Plaintiff's claims, and stay these proceedings pending completion of the arbitral proceedings.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Matthew D. Pearson and Jaikumar Ramanathan concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: March 23, 2026 FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Matthew D. Pearson*
Matthew D. Pearson
Attorneys for Defendant
MIDI HEALTH, INC.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. RELEVANT FACTS & PROCEDURAL BACKGROUND ..... 2
A. Plaintiff's Claims Arise Out of Her Use of Defendant's Website ..... 2
B. Plaintiff Manifestly Agreed to the Terms When She Created an Account on Defendant's Website ..... 2
C. The Terms Contain a Binding Arbitration Agreement and an Informal Dispute Resolution Procedure ..... 5
D. Plaintiff Files This Lawsuit Without Commencing Arbitration ..... 6
III. LEGAL STANDARD ..... 7
IV. ARGUMENT ..... 8
A. Plaintiff Agreed to Arbitrate Her Claims ..... 8
1. Plaintiff entered into a clickwrap agreement with Midi. ..... 8
2. Courts in the Ninth Circuit overwhelmingly enforce clickwrap agreements. ..... 9
3. Plaintiff's claims are covered by the parties' Arbitration Agreement. ..... 10
B. The Parties Delegated Any Issue of Arbitrability to The Arbitrator ..... 12
C. This Court Should Stay the Action Pending Arbitration ..... 14
V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adibzadeh v. Best Buy, Co. Inc.*,
No. 20-cv-06257-JSW, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021)......... 10, 14

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011) ......... 7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ......... 7

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) (Davila, J.) ......... 7

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) ......... 12

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) ......... 14

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) ......... 7, 8, 9

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024) ......... 11

*Kroskey v. Elevate Labs, LLC*,
No. 5:24-cv-08113-EJD, 2025 WL 1507091 (N.D. Cal. May 27, 2025) ......... 14

*L.W.A. v. LinkedIn Corp.*,
No. 5:24-cv-08436-EJD, 2025 WL 2780788 (N.D. Cal. Sept. 30, 2025) ......... 11

*Mohamed v. Uber Techs, Inc.*,
848 F.3d 1201 (9th Cir. 2016) ......... 13

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ......... 7

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 8, 9

*Oracle America, Inc. v. Myriad Group A.G.* ........ 13

*Patrick v. Running Warehouse, LLC* ........ 13

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 7, 12

*Robbins v. Mscripts, LLC*,
No. 23-cv-01381-LB, 2023 WL 5723220 ........ 14

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........ 14

*White v. Ring LLC*,
No. CV 22-6909-JFW(PVCx), 2023 WL 1097554 (C.D. Cal. Jan. 25 2023) ........ 10

*Wilson v. Hatch Bank*,
NO. 23cv813-JES (MPP), 2024 WL 1355492 (S.D. Cal. Mar. 29, 2024) ........ 14

**California Cases**

*B.D. v. Blizzard Entertainment, Inc.*,
76 Cal.App.5th 931 (2022) ........ 8

*Sellers v. JustAnswer LLC*,
73 Cal.App.5th 444 (2021) ........ 9

**Statutes**

9 U.S.C.A.
§ 2 ........ 10

California Invasion of Privacy Act
§§ 631 and 632 ........ 1, 6, 11

Electronic Communications Privacy Act (18 U.S.C.
§ 2511, *et seq.*) ........ 1, 2, 6, 11

Federal Arbitration Act
§ 3 ........ 14

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

**Other Authorities**

Rules, R-7 .......... 13

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Midi is a female-founded virtual healthcare company that provides comprehensive and tailored healthcare to women in their midlife, via its website, www.joinmidi.com (the "Website"). In the above-captioned putative class action lawsuit (the "Action"), Plaintiff Kristin Baker alleges that Midi violated the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA") Sections 631 and 632, and the right to privacy under California's Constitution, by deploying commonly-used website tracking technologies on its Website. Plaintiff's Complaint suffers from several fatal defects. However, the Court need not address those flaws because the claims at issue here are subject to a valid and enforceable Arbitration Agreement, which Plaintiff expressly assented to when she created an account on the Website.

In or around September 2025, Plaintiff visited Midi's Website and scheduled an appointment. Use of the Website is subject to terms and conditions, which are contained in Midi's Terms. These Terms were expressly communicated to Plaintiff during the account set-up process. Plaintiff would not have been able to successfully set up an account on the Website unless and until she expressly manifested her assent to those Terms by clicking a specific button, which she did when she set up her account on April 18, 2024. The Terms constitute an enforceable and legally binding clickwrap agreement between the parties. Courts in the Ninth Circuit routinely uphold and enforce clickwrap agreements just like the one that Plaintiff entered into here.

Midi's Terms contain—currently and at the time Plaintiff set up her account—an Arbitration Agreement. This Arbitration Agreement clearly notified Plaintiff that any dispute or claim relating to her use of the Website or Midi's healthcare services (the "Midi Services") would be subject to individual, binding arbitration. In fact, this disclosure is displayed conspicuously at the very top of the

Terms (which clearly displays a class action and jury trial waiver) and explained in more detail in the body of the Arbitration Agreement itself. The Arbitration Agreement also delegates all arbitrability questions to the arbitrator.

Despite the crystal-clear Arbitration Agreement in the enforceable and binding contract between the parties, Plaintiff bypassed her obligations and filed this Action. She did not initiate arbitration proceedings, as she was required to do.

For these reasons, and described in more detail below, Midi respectfully requests that this Court (1) compel Plaintiff to arbitrate her claims on an individual basis, which Plaintiff agreed to do when she manifested her assent to the Website's Terms, and (2) stay this Action pending completion of those arbitral proceedings.

## II. RELEVANT FACTS & PROCEDURAL BACKGROUND

### A. Plaintiff's Claims Arise Out of Her Use of Defendant's Website

Midi is a female-founded, female-focused healthcare company that "provides patients with personalized care plans that include hormonal and non-hormonal medications, supplements, lifestyle coaching and more." (Compl. ¶ 2, n.1.) Plaintiff's Complaint sets forth threadbare allegations that "[i]n or around September 2025," she visited the Website "and scheduled an appointment." (Compl. ¶ 7.) She alleges that unbeknownst to her, and without her consent, her communications with the Website were intercepted and/or recorded by third parties Google LLC and TikTok, Ltd. (the "Third Parties"), aided by Defendant. (Compl. ¶¶ 1, 5, 8.) Based on these allegations, Plaintiff asserts claims: (1) under the federal ECPA (18 U.S.C. § 2511, *et seq.*); (2) under CIPA §§ 631 and 632; and (3) under the California Constitution. (Compl. ¶ 5.) Each of these claims arises out of and is related to Plaintiff's use of the Midi Services and Website.

### B. Plaintiff Manifestly Agreed to the Terms When She Created an Account on Defendant's Website

In order to access the Midi Services and schedule appointments with providers, visitors to the Website must set up an account. (Declaration of Jaikumar

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Ramanathan at ¶ 4.) Plaintiff Kristin Baker created an account on the Website on April 18, 2024. (Ramanathan Decl. at ¶ 8.)

Midi's records show that Plaintiff registered for an account by inputting her name, email address, phone number, and address into Midi's account sign-up flow. (*Id.* at ¶¶ 9, 14.) After she entered her basic contact information—but before she could press "SUBMIT" and create her account or move forward in any way—Plaintiff was presented with a check box next to the following conspicuous statement: "By clicking the button below and signing up: I have read and accept Midi's Privacy Policy and Terms & Conditions." (*Id.* at ¶ 14.) The terms "Privacy Policy" and "Terms & Conditions" are in blue font, and hyperlinked to pages where Plaintiff could read both the Privacy Policy and Terms before creating her account. (*Id.* at ¶¶ 12-13.) Plaintiff could not create her account—and access the Midi Services—until she checked that box, agreeing that she had in fact "read and accept[ed]" Midi's Terms. (*Id.* at ¶ 14.) The relevant text is presented in a clear, uncluttered format, directly between the account registration form and the "SUBMIT" button.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600



Now let's get you started with Midi—so you can start feeling better, asap.

Create your account to schedule your visit. If you're using insurance, make sure your first and last name match what appears on your insurance card.

First name *: sandeep

Last name *: cs

Email *: sandeep.cs+stg20@joinmidi.com

Phone *: (312) 346-7674

Date of birth *: 11/11/1991

Address*: na

Address 2: na

City*: palo alto

State *: California

Zip*: 94107

How did you hear about us?: Select all that apply

☐ By clicking the button below and signing up:

- I have read and accept Midi's Privacy Policy and Terms & Conditions.
- I agree to receive email messages from Midi, including announcements, treatment plan information, and marketing communications. I understand that I may unsubscribe at any time.

Please check agree terms.

☐ By providing your phone number, you agree to receive text messages from Midi. Message and data rates may apply. Message frequency varies.

Please check the box to give consent for receiving text messages from midi.

SUBMIT

(Ramanathan Decl., Ex. A.)

Once Plaintiff clicked on the hyperlink directing her to a page where she could read the Terms—*which she affirmed that she did by checking the box to create her account*—she immediately would have seen a recital in all capital letters at the very top of the Terms notifying her that:

> BY CLICKING “I AGREE”, CHECKING A RELATED BOX TO SIGNIFY YOUR ACCEPTANCE, USING ANY OTHER ACCEPTANCE PROTOCOL PRESENTED THROUGH THE SERVICE (AS DEFINED BELOW) OR OTHERWISE AFFIRMATIVELY ACCEPTING THESE TERMS AND CONDITIONS, YOU ACKNOWLEDGE THAT YOU HAVE READ, ACCEPTED, AND AGREED TO BE BOUND BY THIS AGREEMENT. IF YOU DO NOT AGREE TO THIS TERMS AND

> CONDITIONS, DO NOT CREATE AN ACCOUNT OR USE THE SERVICE.

(*Id.*, Ex. B, at 2.)

### C. The Terms Contain a Binding Arbitration Agreement.

Plaintiff was also immediately notified at the top of the Terms of the Arbitration Agreement. Just under the paragraph referenced above—which confirmed to Plaintiff that she was agreeing to be bound by the Terms when she checked the box acknowledging that she had read those Terms during account creation—the Terms conspicuously notified Plaintiff that the Terms contained the Arbitration Agreement. (*Id.*) This preamble was also in all capitalized letters, and notified Plaintiff that:

> ARBITRATION NOTICE: UNLESS YOU TIMELY OPT-OUT OF ARBITRATION IN ACCORDANCE WITH THESE TERMS AND CONDITIONS, YOU AGREE THAT DISPUTES BETWEEN YOU AND US OR YOU AND THE MEDICAL GROUPS OR PROVIDERS ARISING OUT OF OR RELATED TO THESE TERMS AND CONDITIONS OR THE SERVICE WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHTS TO A JURY TRIAL AND TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION, AS FURTHER SET FORTH BELOW. WE EXPLAIN SOME EXCEPTIONS AND HOW YOU CAN OPT OUT OF ARBITRATION BELOW.

(*Id.* at 2-3.)

The actual Arbitration Agreement, titled in all bold letters "**Binding Arbitration / Class Waiver**", also begins with a conspicuous preamble in all capital letters informing Plaintiff as to its broad scope. Specifically, the Arbitration Agreement explains that it covers "any legal claim, dispute or other controversy between" the Plaintiff and Midi "arising out of or otherwise relating in any way to the Midi parties, the platform, the content or the service, or any other goods, services or advertising by Midi". (*Id.* at 31-32.) It also specifically noted that it covered "controversies relating to the applicability, enforceability or validity of any

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

provision of this agreement". (*Id.* at 32.) In addition, it specified that any covered dispute would be resolved in confidential binding arbitration conducted before one arbitrator from the American Arbitration Association ("AAA"), and that the arbitration would be governed by AAA's Consumer Arbitration Rules. (*Id.*) Farther down, the Arbitration Agreement reiterates in all capitalized text that "YOU AND WE HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY." (*Id.* at 35.) Under that, the Arbitration Agreement again reiterates that "ALL DISPUTES SUBJECT TO ARBITRATION UNDER THIS AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS." (*Id.* at 36.)

Finally, the Arbitration Agreement contains opt-out procedures. (*Id.* 38-39.) There is no record of Plaintiff opting out of arbitration. (Ramanathan Decl. at ¶ 25.)

**D. Plaintiff Files This Lawsuit Without Commencing Arbitration**

Notwithstanding the parties' valid Arbitration Agreement, Plaintiff filed this putative class action lawsuit on December 4, 2025 instead of submitting her claims to individual arbitration. (Class Action Complaint, Dkt. 1.) Plaintiff asserts claims under ECPA on behalf of a putative nationwide class consisting of "[a]ll individuals residing in the United States who made a purchase, created an account, and/or scheduled an appointment on the website, www.joinmidi.com, during the Class Period." (Compl. ¶ 104.) Plaintiff asserts claims under CIPA and the California Constitution on behalf of a putative California subclass consisting of "[a]ll individuals residing in California who made a purchase, created an account, and/or scheduled an appointment on the website, www.joinmidi.com, during the Class Period." (*Id.*) Plaintiff seeks class certification, declaratory relief, injunctive and other equitable relief, monetary damages, attorneys' fees and expenses and costs of suit and pre-judgment interest. (*Id.* at "Prayer for Relief".) The parties' Arbitration Agreement covers each of these asserted claims.

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration." *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25. Due to this "liberal federal policy" that favors arbitration, "courts must place arbitration agreements on an equal footing with contracts . . . and enforce them according to their terms." *AT&T Mobility LLC*, 563 U.S. at 339 (internal citations omitted). In fact, the FAA "requires" courts "to compel arbitration of claims covered by an enforceable arbitration agreement." *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024).

In deciding a motion to compel arbitration, a court's role is to determine: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *see also Ghazizadeh v. Coursera, Inc.*, Case No. 5:23-cv-05646-EJD, 737 F. Supp. 3d 911, 918 (N.D. Cal. 2024) (same). But, "these gateway issues can be expressly delegated to the arbitrator where the parties *clearly and unmistakably provide otherwise*." *Brennan*, 796 F.3d at 1130 (internal quotations and citations omitted); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitration 'gateway' issues").

The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *See, e.g.*, *Keebaugh*, 100 F.4th at 1013. Once a court determines that a valid arbitration agreement does exist, "the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced." *Ghazizadeh*, 737 F. Supp. 3d at 918. "If the court finds a valid arbitration agreement exists, 'the court must order

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Keebaugh*, at 1013 (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023)).

## IV. <u>ARGUMENT</u>

### A. Plaintiff Agreed to Arbitrate Her Claims

#### 1. <u>Plaintiff entered into a clickwrap agreement with Midi.</u>

"In determining whether the parties have agreed to arbitrate a particulate dispute, federal courts apply state-law principles of contract formation." *Oberstein*, 60 F.4th at 510 (citing *Berman v, Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein* at 512-513. "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *B.D. v. Blizzard Entertainment, Inc.*, 76 Cal.App.5th 931, 943 (2022) (citing *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 460 (2021)).

The same is true with regard to contracts made over the internet. The fundamental nature of contracting—and the requirement of mutual manifestation of assent—remains in effect. "These consent principles apply with equal force to arbitration provisions contained in contracts purportedly formed over the internet." *Blizzard Entertainment, Inc.*, 76 Cal. App. at 943 (internal quotations and citation omitted). A "manifestation of assent" can often "be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons." *Id.* at 944.

Under California law, courts generally classify internet contracts "by the way in which the user purportedly gives their assent to be bound by the associates terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Sellers*, 73 Cal. App. at 463. "A 'browsewrap' agreement is one in which an internet user accepts a

website's terms of use merely by browsing the site." *Id.* "A 'clickwrap' agreement is one in which the internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." *Id.* "A 'scrollwrap' agreement is like a 'clickwrap,' but the user is presented with the entire agreement and must physically scroll to the bottom of it to find the 'I agree' or 'I accept' button". *Id.* Finally, a "[s]ign-in-wrap" agreement is one "in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service"—however, the user is not required to indicate that they actually read the agreement's terms before signing up. *Id.*

In this case, Plaintiff formed a classic clickwrap agreement with Midi. This is indeed the "most straightforward application of these principles" because the Website here "presente[ed] users with specified contractual terms on a pop-up screen and users [had to] check a box explicitly stating 'I agree' in order to proceed." *Oberstein*, 60 F.4th at 513 (citation omitted). Plaintiff could not have—and in fact did not—set up her account with Midi without affirming that she read and agreed to the Website's Terms. She clearly and unambiguously manifested her assent to the Terms (which contained the Arbitration Agreement) by checking that box.

2. **<u>Courts in the Ninth Circuit overwhelmingly enforce clickwrap agreements.</u>**

Courts in the Ninth Circuit routinely and overwhelmingly find clickwrap agreements—similar to the one here—enforceable. *Oberstein*, 60 F.4th at 513; *see also Keebaugh*, 100 F.4th at 1014 ("Courts have routinely found clickwrap agreements enforceable") (internal quotations and citation omitted); *Adibzadeh v. Best Buy, Co. Inc.*, No. 20-cv-06257-JSW, 2021 WL 4440313, at *4-6 (N.D. Cal. Mar. 2, 2021) (holding that the plaintiff agreed to the relevant terms and conditions by consenting to a clickwrap agreement on the defendant's website, and noting that



Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

"[c]ourts in the Ninth Circuit and other circuits acknowledge that mutual assent manifests when internet users accept 'clickwrap' agreements", in a case involving "a website where users must agree to the website's terms and conditions before they can proceed, and the terms and conditions are offset in a blue text, hyperlinked text.").

It is immaterial whether Plaintiff actually clicked on the hyperlinked Terms and read through them. Indeed, in the clickwrap agreement context, "it is well established that it is of no consequence whether a consumer actually clicks a hyperlink to read the terms containing the arbitration provision or not." *White v. Ring LLC*, No. CV 22-6909-JFW(PVCx), 2023 WL 1097554, at *5 (C.D. Cal. Jan. 25 2023) (court holding that the defendant's terms and conditions were presented to the plaintiff as a fully enforceable modified clickwrap agreement and that by making her purchase on the website, she affirmatively accepted the terms, including the arbitration agreement) (cleaned up and citation omitted). Plaintiff affirmatively took a step to affirm that she *had* read and agreed to the Terms.

3. **<u>Plaintiff's claims are covered by the parties' Arbitration Agreement.</u>**

The Terms specify that the FAA "will govern the interpretation and enforcement of this Arbitration Agreement and any arbitration proceedings." (Ramanathan Decl., Ex. B at 34-35.) The FAA provides that an arbitration agreement in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable". 9 U.S.C.A. § 2. The FAA thus governs this motion because the Website affects commerce—it is accessed by visitors from across the United States.

Plaintiff's claims under the CIPA, the ECPA, and the California Constitution are all subject to the mandatory arbitration provision in the Terms because they relate directly to Plaintiff's use of the Website and Midi Services. Plaintiff alleges that her communications on the Website were intercepted by third parties when she

"visited the Midi Health Website and scheduled an appointment." (Compl. ¶ 8.) The preamble at the top of Midi's Terms related to the Arbitration Agreement state that any "DISPUTES BETWEEN YOU AND US . . . ARISING OUT OF OR RELATED TO THESE TERMS AND CONDITIONS OR THE SERVICE WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION". (Ramanathan Decl., Ex. B, at 2-3.) The "Service" is defined as "any products or services provided through the Platform or otherwise by Midi, and any affiliated website, software or application owned or operated by Midi". (*Id.* at 3.) "Platform" is defined as "the website located at www.joinmidi.com . . . [and] a 'Midi' mobile application". (*Id.*) Thus, the Arbitration Agreement clearly states that any dispute or claim relating to Plaintiff's use of the Website or Midi Services is covered by the Arbitration Agreement.

Generally, courts in the Ninth Circuit—including this Court—broadly construe agreements requiring arbitration of disputes related to use of a website. *See, e.g.*, *L.W.A. v. LinkedIn Corp.*, No. 5:24-cv-08436-EJD, 2025 WL 2780788, at *4 (N.D. Cal. Sept. 30, 2025) (this Court determining that Defendant met its burden to show that the plaintiff's claims fall within the relevant arbitration agreement's scope because the defendant had argued that the plaintiff's claims were within the scope of the arbitration agreement because they "ar[o]se out of Plaintiff's use of [Defendant's] website" and the plaintiff did not argue otherwise); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1125 (S.D. Cal. 2024) (in deciding motion to compel arbitration in situation involving a sign-in wrap agreement, court holding, *inter alia*, that the plaintiff's claims were subject to the arbitration agreement in website's terms of service, because the arbitration agreement covered "any dispute, claim, or disagreement" arising out of a user's "use of the Services", and "Services" was defined to include the defendant's "applications, products, services and websites").



Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Thus, Plaintiff's claims fall directly within the scope of the broad Arbitration Agreement in the Terms, and must be individually arbitrated in front of AAA.

**B. The Parties Delegated Any Issue of Arbitrability to The Arbitrator**

The Arbitration Agreement at issue here delegates questions of arbitrability to the arbitrator. The Arbitration Agreement states that it covers any legal claim, dispute, or other controversy, "INCLUDING CONTROVERSIES RELATING TO THE APPLICABILITY, ENFORCEABILITY OR VALIDITY OF ANY PROVISION OF THIS AGREEMENT". (Ramanathan Decl., Ex. B, at 32.) In addition, the Arbitration Agreement also states that "THE ARBITRATION WILL BE GOVERNED BY THE AAA'S CONSUMER ARBITRATION RULES AND, IF THE ARBITRATOR DEEMS THEM APPLICABLE, THE SUPPLEMENTARY PROCEDURES FOR CONSUMER RELATED DISPUTES". (*Id.*)

The Supreme Court has long held that parties can expressly delegate "gateway" questions of arbitrability, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68-69 (2019) (internal quotation marks omitted). The parties' agreement must delegate these questions by "clear and unmistakable" evidence. *Id.* at 69. When parties do this, "a court may not override the contract" and "a court possesses no power to decide the arbitrability issue." *Id.* at 68. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional agreement just as it does on any other." *Rent-A-Center, West, Inc.*, 561 U.S. at 70. The Ninth Circuit, too, has held that parties can delegate issues of "enforceability, revocability or validity of the Arbitration Provision" to arbitrators, as long as the questions are "clearly and unmistakably" delegated. *Mohamed v. Uber Techs, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). The broad and encompassing language of the Arbitration Agreement

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

here meets the Ninth Circuit's standard because it specifically states that any dispute related to "THE APPLICABILITY, ENFORCEABILITY OR VALIDITY OF ANY PROVISION OF THIS AGREEMENT" should be decided through arbitration. (Ramanathan Decl., Ex. B, at 32.)

Courts in this Circuit also agree that incorporating the arbitrator's rules into an arbitration agreement constitutes "clear and unmistakable" evidence that the parties delegated these questions to an arbitrator. In *Oracle America, Inc. v. Myriad Group A.G.*, the Ninth Circuit considered this issue relating to the AAA rules specifically, and noted that "[v]irtually every circuit to have considered the issue has determined that the incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." 724 F.3d 1069, at 1074 (9th Cir. 2013). That court held that it saw "no reason to deviate from the prevailing view" that incorporating these rules into an arbitration agreement is "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Id.* at 1074-75. In *Patrick v. Running Warehouse, LLC*, the Ninth Circuit similarly considered this issue and held that "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." 93 F.4th 468, 481 (9th Cir. 2024).

The parties incorporated the arbitrator's rules into the Arbitration Agreement. The specific rules that are incorporated into the Arbitration Agreement at issue here—the AAA Consumer Arbitration Rules—expressly provide that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to . . . scope . . . or the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules, R-7(a) (Declaration of Matthew D. Pearson, Ex. A.). By incorporating the AAA rules into the Arbitration Agreement, the parties clearly agreed to submit arbitrability issues to the arbitrator, and not this Court. *See, e.g.*, *Abibzadeh*, 2021 WL 4440313 at *8 ("By

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

incorporating the AAA rules into the [relevant] Terms, the parties clearly and unmistakably agreed to submit arbitrability issues to an arbitrator. Thus, the Court may not rule on arbitrability questions."); *see also Wilson v. Hatch Bank*, No. 23cv813-JES (MPP), 2024 WL 1355492, at *9 (S.D. Cal. Mar. 29, 2024) (granting motion to compel arbitration, and determining that "incorporation of the AAA rules constitutes clear and unmistakable evidence that [the parties] intended to delegate arbitrability."); *Robbins v. Mscripts, LLC*, No. 23-cv-01381-LB, 2023 WL 5723220, at *5-6 (N.D. Cal. Sept. 5, 2023) (granting motion to compel arbitration, determining that the agreement "provides that arbitration is the mechanism to resolve all disputes, including the interpretation and enforceability of the agreement", and collecting cases in which courts within the Ninth Circuit have held that an arbitration agreement's incorporation of the AAA rules is a clear delegation of authority to the arbitrator).

### C. This Court Should Stay the Action Pending Arbitration

The Court should stay this Action pending completion of the arbitration. Where, as is the case here, "a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024) (staying district court action pending arbitration of the claim, and confirming that "a district court does not have discretion to dismiss the action when granting a motion to compel"); *Kroskey v. Elevate Labs, LLC*, No. 5:24-cv-08113-EJD, 2025 WL 1507091 (N.D. Cal. May 27, 2025) (staying case pending arbitration).

## V. <u>CONCLUSION</u>

Plaintiff entered into a valid and enforceable clickwrap agreement with Midi, in which she agreed to arbitrate her claims against Midi on an individual, binding basis. Accordingly, Midi respectfully requests that this Court grant Midi's motion to compel arbitration, stay this action pending that arbitration, and award any other

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

and further relief as the Court deems just and proper.

DATED: March 23, 2026 FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Matthew D. Pearson*
Matthew D. Pearson
Attorneys for Defendant
MIDI HEALTH, INC.